Date signed October 26, 2007



NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| **In re:** | * | |
| | | |
| **THE CENTRE FOR MANAGEMENT AND TECHNOLOGY, INC.** | * | **Case No. 07-19486-NVA** |
| | * | **(Involuntary Chapter 7)** |
| **Alleged Debtor.** | | |
| | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**MEMORANDUM OF DECISION IN SUPPORT OF ORDER
DIRECTING APPOINTMENT OF INTERIM TRUSTEE UNDER
SECTION 303(g) OF THE BANKRUPTCY CODE**

The Court has before it an Emergency Motion for Appointment of Interim Trustee

pursuant to Section 303(g) of the Bankruptcy Code [Document 6] (the "Emergency Trustee

Motion" or "Emergency Motion"), filed by Provident Bank, Butler Capital Corporation and Dell

Financial Services ("Dell" or "DFS") (together, "Movants"). Provident, Butler and Dell also

served as the three involuntary petitioners who filed an involuntary chapter 7 case against The

Centre for Management and Technology, Inc.

## BACKGROUND

The Centre for Management and Technology, Inc. ("CMAT" or "Alleged Debtor") is a 501(c)(3) organization whose activities include consulting with and advising non-profit entities. Emergency Motion at 2.  According to CMAT's Executive Director, CMAT currently runs a school tech program, maintains "cyber-centers" at various recipient entities, is preparing to open a new cyber-center, and is attempting to secure new grants.  CMAT's Executive Director further reports that CMAT is part of (or is under) an "umbrella" of various non-profit and for-profit affiliates, including its management company SmartEdge International, SmartSoftware USA, and CMAT International, Inc. a/k/a SmartEdge Consulting, Inc.

Movant Butler Capital Corporation holds an interest in three lease agreements that CMAT originally entered into with another company.  Butler claims it is currently owed $868,412.17 under these lease agreements, for which it obtained judgments against CMAT and its principal Alan Fabian.  Movant Dell leased or sold large quantities of computer equipment to CMAT and claims it is currently owed $1,762,320.10 under these leases.  Movant Provident Bank extended a series of loans to CMAT over an eight-month period in 2005, and claims that CMAT is in default under these loans.  Provident obtained judgments by confession against CMAT exceeding $4.5 million.

The involuntary chapter 7 petition [Document 1] was filed in this case on September 28, 2007, by the involuntary petitioners.  The Summons to Debtor in Involuntary Case [Document 3] was issued by the Clerk of Court on October 1, 2007, and as indicated in that summons, the time for the Alleged Debtor to respond to the involuntary petition expired on or about October 21, 2007.

Prior to hearing the Emergency Trustee Motion, the Court entered an Order [Document

9] shortening the time to respond to that motion to 5:00 p.m. on October 11, 2007. On October 11, 2007, CMAT filed a two-page paper entitled "Motion to Dismiss for Lack of Jurisdiction" [Document 23]. The Motion to Dismiss states that CMAT is not a permissible involuntary debtor because it is an eleemosynary institution and Section 303 of the Bankruptcy Code, which governs involuntary petitions, makes such entities exempt from involuntary petitions. CMAT's Motion to Dismiss alleges that since the involuntary case is inappropriate, then so, too, is the Emergency Trustee Motion. CMAT's Motion to Dismiss for Lack of Jurisdiction also claims that Orders entered in other proceedings, primarily an ongoing criminal proceeding against Alan Fabian, which is pending in the United States District Court for the District of Maryland (MJG-07-0355), make the Interim Trustee "redundant and unnecessary." Mr. Fabian, who is a principal of CMAT, is the subject of an indictment issued on August 8, 2007, among, for other things, bankruptcy fraud.

The Court conducted three days of evidentiary hearings on the Emergency Trustee Motion, concluding on October 19, 2007. All parties were represented, including the United States Trustee. CMAT's counsel made a limited appearance.

At the outset of the hearing, the Court announced that even though CMAT's pleading was styled as a Motion to Dismiss [the Case] for Lack of Jurisdiction, to the extent it contains allegations responsive to the Emergency Trustee Motion, the Court would consider those allegations at the hearing.

CMAT's counsel conceded at the hearing that this Court does have jurisdiction to consider the subject Emergency Motion under Section 303(g). Although the jurisdictional defect alleged in the Motion to Dismiss is addressed preliminarily in this Memorandum, the question of this Court's jurisdiction will be finally adjudicated in conjunction with the parties' dispute over

3

whether an order for relief may be entered on the involuntary petition. As a practical matter, the appointment of a chapter 7 trustee would be automatic if the Court were to enter an order for relief on the involuntary petition. The response time for an involuntary petition is twenty days. Accordingly, the Court questioned the parties as to whether the appointment of a trustee could await determination of whether an order for relief under chapter 7 would issue. Both sides responded that disposition of the propriety of the involuntary petition would take weeks, partly because the creditor parties want discovery on the Alleged Debtor's Motion to Dismiss. Therefore, the Court heard the matter on an emergency basis since it did not appear that time would permit the more efficient disposition of waiting to see whether an ordinary Chapter 7 Trustee would be appointed.

Although CMAT filed a Motion to Dismiss containing certain allegations which were deemed pertinent to the Emergency Motion (*i.e.*, that an emergency trustee would be "redundant" in light of orders in the criminal case against Mr. Fabian), CMAT's paper did not put into dispute any of the factual allegations of the Emergency Trustee Motion. CMAT's counsel placed on the record an oral statement of the allegations CMAT disputes.

The Court heard the testimony of two witnesses present in the courtroom for the Movants, and CMAT's cross examination. The Court also heard the testimony of CMAT's Executive Director, Cheryl Coleman, and Angelina Banks, a consultant at CMAT. Numerous documents were admitted into evidence and the Court took judicial notice of many of its own records and other public records.

## THE LEGAL STANDARD

Section 303(g) of the Bankruptcy Code provides that during the "gap" period between the date of an involuntary case's commencement and the date of any order for relief, "the court,

on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor." 11 U.S.C. § 303(g).  See In re James Plaza Joint Venture, 62 B.R. 959, 961 (Bankr. S.D. Tex. 1986) (appointing an interim trustee in an involuntary Chapter 7 petition under the section 303(g) standard); In re Alpine Lumber & Nursery, 13 B.R. 977, 979 (Bankr. D. Cal. 1981) (finding appointment of interim trustee warranted in involuntary chapter 11 petition under 303(g)); In re Professional Accountants Referral Services, Inc., 142 B.R. 424 (Bankr. D. Colo. 1992) (same).

In addition, so as to avoid appointing an interim trustee in a case that will soon be dismissed, the Court must determine as a preliminary matter:

> that there is a reasonable likelihood, or probability, that this Debtor will eventually be found to be a proper involuntary debtor under 11 U.S.C. § 303 and that an order for relief will enter. In the absence of such finding, . . . the appointment of a trustee during the gap period would be more tenuous, probably improper, and likely an abuse of discretion.

In re Professional Accountants, 142 B.R. at 429.

## DISCUSSION

Movants contend that an interim trustee is necessary in this case both to protect the Alleged Debtor's property and to prevent loss to the estate.  Movants also argue that appointment of an interim trustee is not an abuse of discretion in this case because CMAT is likely to be found to be a proper debtor.  See In re Professional Accountants, 142 B.R. at 429.  CMAT counters that an interim trustee is not warranted in this case because: i) the Protective Order entered by the District Court involving CMAT principal Alan Fabian is sufficient to protect the Movants' interests, and ii) CMAT is not likely to be found a proper involuntary debtor because

5

CMAT is not "a moneyed, business, or commercial corporation" and is therefore exempt from being the subject of an involuntary petition pursuant to Section 303.  11 U.S.C. § 303(a).  The Court will first address the Alleged Debtor's argument that CMAT is unlikely to be found to be a proper involuntary debtor.

**A.      The Likelihood that an Order for Relief will be Issued**

Under Section 303(b)(1), an involuntary petition may be commenced "by three or more entities, each of which is [] a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, . . . , if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims . . . ."  11 U.S.C. § 303(b).

For purposes of determining whether there is a "reasonable likelihood" that an order for relief will be issued, it appears at this juncture that the requirements of Section 303(b) can be satisfied.  CMAT does not dispute the Movants' claims amounting to more than $7 million, and the Movants appear to concede that their claims to meet the aggregate $13,475 minimum are unsecured, as required by Section 303(b).  See 2-303 Collier on Bankruptcy § 303.05 (15th ed. 2007) ("Another aspect of the dollar requirement [under Section 303(g)] is that the dollar amount must be calculated based on unsecured, as distinguished from secured, debt.  This is supported by the language 'more than the value of any lien on property ... securing such claims.'").  The Alleged Debtor did not overcome the Movants' evidence that CMAT is not paying it debts as they become due.  See 11 U.S.C. § 303(h)(1).  CMAT has not paid rent on its "Lakefront property" since May of 2007 and is not currently paying rent on its corporate office at 621 East Pratt Street in Baltimore.  CMAT's Executive Director also testified that CMAT is not making payments to any of its approximately 20-30 lessors.

6

The only point seeming to be in contention is whether CMAT is "a corporation that is not a moneyed, business, or commercial corporation."  Under Section 303(a), "[a]n involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person, except a farmer, family farmer, *or a corporation that is not a moneyed, business, or commercial corporation*, that may be a debtor under the chapter under which such case is commenced."  11 U.S.C. § 303(a) (emphasis added).  In interpreting this phrase, the Fourth Circuit Court of Appeals in In re Allen University, 497 F.2d 346 (4th Cir. 1974), stated that "the phrase 'moneyed, business, or commercial corporation' has acquired a meaning which limits it to corporations organized for profit."  Id. at 348.

An alleged debtor must plead that it is not a "moneyed, business, or commercial corporation" as an affirmative defense.  In re Caucus Distrib., Inc., 83 B.R. 921, 930 (Bankr. E.D. Va. 1988).  Some courts interpret Section 303(b) to exempt all non-profit organizations.  However, in the Fourth Circuit, an alleged debtor claiming to be an exempted eleemosynary institution must satisfy a two-pronged test by establishing that it: i) is considered an eleemosynary organization under state law, and ii) actually conducts itself as an eleemosynary organization.  See In re Caucus, 83 B.R. at 930 ("[I]t is clear that we must base our decision on more than the corporation's charter and status under state law."); In re Allen, 497 F.2d at 348 (considering the alleged debtor's status under state laws as well as its for-profit activities to determine that the alleged debtor was not "within the realm of a 'moneyed, business, or commercial corporation'").

The Court is not convinced that CMAT has conclusively met either prong of this test, and it must meet both.  Although Movants concede that CMAT may be an eleemosynary organization, neither party presented convincing evidence that CMAT is recognized under *state*

law as a non-profit organization. In fact, neither party even discussed the requirements of non-profit status under relevant state law. See Sims v. Fidelity Assur. Ass'n, 129 F.2d 442, 451 (4th Cir. 1942) ("[I]n determining whether a corporate debtor is a member of the excepted classes, the provisions of the *state* law must be given predominating influence.") (emphasis added).[1] In In re Allen, the Fourth Circuit considered the status of the alleged debtor (a university) as a non-stock corporation to be evidence of its non-profit status. 497 F.2d at 348. In In re Caucus, the district court considered the alleged debtors' corporate charter referring to the corporations as non-profits, and finding their "status under New York" to be probative. 83 B.R. at 931. CMAT's articles of incorporation listing its charitable purpose may in the end satisfy this technical requirement, but the Court cannot at this juncture conclude with any certainty that the technical requirement is satisfied.

Even assuming that CMAT has satisfied the first prong of the non-"moneyed" requirement, there is evidence that CMAT's actual activities undermine any technical non-profit status it may hold. In particular, the Court looks to evidence of commingling, including entries in CMAT's financial reports to the United States District Court (Resp Ex 1) that show money transfers between CMAT and its for-profit affiliates. Furthermore, there is evidence of co-use of assets by the several entities which fall under the CMAT "umbrella." CMAT's Executive

---

[1]  CMAT did submit evidence of its 501(c)(3) status (Resp Ex 5), as well a copy of its corporate charter (Resp Ex 2) which states that CMAT's purpose is "to operate exclusively for charitable, religious, educational, or scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding section of any future federal tax code (the "Code")." Nevertheless, CMAT never discussed the law governing non-profit organizations in Maryland. See MD. CODE ANN., BUS. REG. §§ 6-101 *et seq.* Although CMAT's charter may ultimately be probative on this issue, greater analysis of the applicable law is required before a final determination on CMAT's corporate status can be made. See In re Capitol Hill Healthcare Group, 242 B.R. 199, 202 (Bankr. D. D.C. 1999) ("State law organization or registration as a non-profit corporation is not decisive. But such organization or registration is probative . . . .")

Director testified that several affiliated entities operating for profit, such as SmartEdge International and SmartSoftware USA use CMAT's corporate office space, office supplies and telephone number, yet do not pay any rent to CMAT. There is clear evidence of a lack of respect for corporate formalities by CMAT.

In partial response to this evidence, CMAT points to case law that supports a non-profit institution's right to use for-profit initiatives to support its charitable activities, and argues that CMAT's for-profit affiliates do not undermine its status as an eleemosynary institution. See In re Capitol Hill Healthcare Group, 242 B.R. 199, 203 (Bankr. D. D.C. 1999) (finding that non-profit's practices of joint borrowing and audits with for-profit entities "do not establish that the debtor is conducted to earn a profit, as the borrowings are only for the benefit of the debtor and its sister non-profit corporation, the Hospital, and the joint audits minimized accountants' fees"). In the present case, however, the reverse seems to be true. It appears from the evidence that it is the resources of the alleged eleemosynary institution that are being used to bolster the operations of for-profit affiliates. In In re Capitol Hill and In re Allen, the for-profit entities supported the charitable work of the non-profit alleged debtors, while in this case the non-profit Alleged Debtor is claimed to have been engaged in activities to support for-profit affiliates. Thus, In re Capitol Hill is not dispositive of the issues here.

To be clear, the Court does not reach the ultimate issue of whether CMAT is indeed a proper involuntary debtor, and the question of whether CMAT is an exempted non-profit institution remains open pending further discovery and argument, as both sides have requested. What is undisputed for purposes of this motion is that movants have claims against CMAT, and

CMAT generally is not paying its debts as they become due.[2]

The Court determines, based solely on the evidence submitted at the hearing on this Emergency Motion, that CMAT has not met its burden of showing that it is an eleemosynary institution exempt from an involuntary petition under Section 303.  For this reason, the Court further decides that there is a reasonably likelihood that CMAT will be found a proper debtor under Section 303.  See In re Professional Accountants, 142 B.R. 424.

**B.      The Merits of Movants' Section 303(g) Motion**

An interim trustee may be appointed only "if such appointment is necessary to preserve property of the estate or prevent loss to the estate."  11 U.S.C. § 303(g).  See In re James Plaza, 62 B.R. at 961 (appointing an interim trustee in an involuntary Chapter 7 petition under the section 303(g) standard); In re Alpine Lumber, 13 B.R. at 979 (finding appointment of interim trustee warranted in involuntary Chapter 11 petition under 303(g)); In re Professional Accountants, 142 B.R. 424 (same).  As stated earlier, Movants here argue that appointment of an interim trustee is necessary to both preserve the alleged debtor's estate and to prevent loss to the estate.

The Court already has determined above that there is a reasonable likelihood that CMAT will be found a proper involuntary debtor.

The Court further finds that Movants have met their burden under Section 303(g) to demonstrate the need for an interim trustee to preserve estate property and prevent loss to the

---

[2]CMAT claims that it is not paying its debts as a result of Movant Provident's freezing of CMAT's accounts.  The evidence suggests, however, that CMAT was not paying its debts prior to the freezing.  For example, Mark Hanley of Lakefront LP(landlord for CMAT at its "Lakefront property") testified that he has received no rental payments from CMAT since May of 2007, when he received only a partial payment.

10

estate.  Although the Court need not wade through all the evidence of an alleged double financing scheme, particularly in light of the fact that CMAT's CEO, Alan Fabian was not present for the hearing, a few items should be noted which require a new set of eyes in the form of an interim trustee:[3]

- Evidence presented by Movant Butler through the testimony by Mr. Polack, along with financial documents involving Butler, DFS and CMAT, showed that at least fifty Dell branded products to which Butler asserts an interest are, after further review, believed to be subject to DFS's interest.[4]

- The leased equipment at issue in this involuntary petition is at risk of being lost or at a minimum removed from its current location.  CMAT faces two pending Motions for Relief from Stay filed by CMAT's landlords, Lakefront LP and Cordish Power Plant Number Two.  At this point, CMAT has no counsel for the purpose of defending these motions and once the relatively short windows for disposing of these matters under Section 362 has elapsed, any CMAT property in its corporate offices/warehouse/data center could conceivably be subject to removal, including the leased equipment at issue in this case.

- Strong uncertainty exists as to the reliability of CMAT's financial records and the nature of the organization itself.  There is evidence of murky financial recordkeeping at CMAT and a disconcerting lack of knowledge of CMAT by its Executive Director.  For example, financial reports submitted to the District Court reflect the existence of a $500,000 "donation" which CMAT's Executive Director cannot verify.  She cannot even provide the name of the source of the donation.  See Resp. Ex. 1.  Additionally, these reports reveal several inter-entity transfers within the CMAT "umbrella."  Further, there is at least one mistake admitted in the reports, an alleged rental payment to Lakefront LP

---

[3]    The Court specifically does not rest its decision on the board minutes submitted into evidence suggesting a transfer of assets between CMAT and its management company SmartEdge International.  The Court similarly does not rely for purposes of its determination here on the indictment in Mr. Fabian's criminal case because although Movants point out that the indictment is based on probable cause, Movants did not demonstrate that an indictment based on probable cause has any evidentiary value in this Court for Section 303(g) purposes.

[4]    At the conclusion of the October 19 hearing, the Court ordered the parties to allow Movant DFS to inventory all Dell branded equipment at CMAT premises and off-site placements, including CMAT cyber-centers.  The Alleged Debtor through its Executive Director agreed and was directed by the Court to cooperate in providing access to CMAT premises, and to use her best efforts to arrange access at off-site facilities where DFS's equipment has been placed.  The Court ordered that no more than three Dell employees could be present at any one time to conduct this inventory and that such employees may create no major disruptions at the CMAT facilities throughout the duration of the inventory.

which was never received, and this entry appears never to have been corrected in subsequent financial reports submitted to the District Court.  An interim trustee is needed to try to make sense of these murky records and testimony.

- Discrepancies exist in at least one form I-990 submitted by CMAT (or its representatives) to the IRS, reflecting a certain lack of concern with the technical correctness of forms.  In one section, CMAT indicates that its officers and directors are not compensated, yet in another section, CMAT reports a salary for Alan Fabian who the Executive Director admits is an officer or director.

CMAT claims that the Protective Order in Mr. Fabian's criminal case adequately protects Movants' interests in CMAT property. Obviously, this Court did not issue that Protective Order, and the issuing District Court is certainly free to amend or even vacate its Protective Order at the behest of the government or otherwise.  Further, the Protective Order was issued under a different standard than the Section 303(g) standard being considered here today, and the Protective Order was not designed specifically to protect CMAT's assets from actions by creditors.

In sum, the evidence demonstrates the need for an interim trustee under Section 303(g). Accordingly, the Court will direct the appointment of an interim trustee in this case.

## THE BOND REQUIREMENT UNDER SECTION 303(g)

Having determined that an interim trustee is needed, the Court must address the bond requirement.  Bankruptcy Rule 2001(b) addresses the appointment of an interim trustee under Section 303(g) and states: "An interim trustee may not be appointed under this rule unless the movant furnishes a bond in an amount approved by the court, conditioned to indemnify the debtor for costs, attorney's fee, expenses, and damages allowable under § 303(i) of the Code." Fed. R. Bankr. Proc. 2001(b).

Movants have asked the Court to consider the Movant's status as financial institutions and their standing in the community and to require no bond.  CMAT maintains that $500,000 is necessary to cover attorney fees and damages incurred by CMAT during the pendency of these proceedings. CMAT argues that it cannot obtain new lines of credit while the involuntary matter is pending.  Presumably CMAT means for the Court to consider this as an element of potential damages.

The Court finds that the Rule 2001(b) bond requirement is mandatory rather than discretionary, and that a substantial amount of fees may be required to defend against the involuntary petition in this case.  The issue whether CMAT is exempted as an eleemosynary organization must ultimately be determined, and the issue is not insubstantial.  Furthermore, the Movants/involuntary petitioners made it clear at the hearing that they intend to take considerable discovery on the issue over a not inconsequential period of time.  The Court notes that although the Alleged Debtor did not seek a bond under Section 303(e), which is designed to indemnify a debtor for attorneys fees and/or damages proximately caused by an improper involuntary filing, this could be a factor down the road.  Accordingly, the Court will set a bond at this juncture in the amount of $100,000.00 to be apportioned among the Movants pro rata, in consideration of the amounts of their respective claims against the Alleged Debtor, as set forth in their Emergency Motion - - - specifically 64% by Provident, 24% by Dell, and 12% by Butler.  The Movants and the U.S. Trustee may agree to a different allocation among the Movants provided that a bond in the aggregate amount of $100,000.00 is posted.  The Movants shall make a showing satisfactory to the U.S. Trustee that a bond has been posted in accordance with this Memorandum and companion Order.

13

## <u>CONCLUSION</u>

For the reasons stated above, the Court directs the appointment of an interim trustee in the pending involuntary case, and sets a bond under Bankruptcy Rule 2001(b) in the amount of $100,000.00.


cc:      The Centre for Management and
Technology, Inc.
Attn: Corporation Trust, Inc.
Resident Agent
300 E. Lombard Street
Baltimore, MD 21202

Ronald B. Katz, Esq.
11403 Cronridge Drive
Suite 230 Owings Mills, MD 21117

Office of the U.S. Trustee
101 W. Lombard Street
Suite 2625
Baltimore, MD 21201

Evan Goldman, Esq.
Goldman & Goldman, P.A.
36 South Charles Street
Suite 2401 Baltimore, MD 21201

Joel Perrell, Esq.
Miles & Stockbridge, P.C.
10 Light Street
Baltimore, MD 21202

Mr. Alan Fabian
The Centre for Management and
Trchnology, Inc.
621 E. Pratt Street, Suite 200
Baltimore, MD 21202

Howard Heneson, Esq.
810 Gleneagles Court
Suite 301
Towson, MD 21286

**END OF MEMORANDUM**